Morgan Ice Company, Inc. v. Commissioner.
Morgan Ice Co. v. Commissioner
Docket No. 17020.
United States Tax Court
1950 Tax Ct. Memo LEXIS 256; 9 T.C.M. (CCH) 170; T.C.M. (RIA) 50052; March 8, 1950
*256 On the facts, held, petitioner has sustained the burden of establishing that it had no taxable net income for the taxable year 1943 and the taxable period January 1, 1944 to December 30, 1944. R. B. Cannon, Esq., for the petitioner. F. S. Gettle, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves income, declared value excess-profits and excess-profits taxes and penalties for the year 1943 and the period January 1, 1944 to December 30, 1944, as follows: Jan 1 to
Year
Dec. 30
1943
1944
Income tax
$ 2,330.00
$ 3,680.00
25% delinquency penalty
582.50
920.00
Declared value excess-prof-
its tax
4,824.51
10,899.97
25% delinquency penalty
1,206.13
2,724.99
Excess-profits tax
26,077.32
52,794.40
25% delinquency penalty
6,519.33
13,198.60
The issues involved are: (1) Whether respondent erred in determining petitioner's taxable net income for the periods involved. (2) Whether petitioner has established that it sustained a net operating loss for the year 1942. (3) Whether respondent properly asserted the 25 per cent penalty for failure to file timely *257 returns. The case was submitted on oral testimony, documentary proof, and exhibits. Findings of Fact Petitioner was organized under the laws of the State of Texas July 1, 1934, for the purpose of engaging in the ice business. Its principal office was in Beaumont, Texas. Petitioner was dissolved on December 30, 1944. Its existence continues through its board of directors acting as statutory liquidating trustees. Vernon's Civil Statutes, Art. 1389. Its returns for the periods involved were filed with the collector of internal revenue for the first district of Texas. At all times prior to January 1, 1943 petitioner kept its books of account on the accrual basis and filed its Federal tax returns upon the basis of the calendar year. During 1943 petitioner moved its principal office and its records several times. At the date petitioner's returns for the taxable periods involved were examined by a revenue agent, upon the basis of whose reports the notice of deficiency was predicated, and at the time of the hearing of this proceeding, its general ledger and other books of account had disappeared. The only then available records consisted of a mass of miscellaneous checks, bank statements *258 and other papers, and an audit report compiled by the accounting firm of Koshkin and Levingston. Petitioner was incorporated by and its stock issued to Wade Hopkins, who died intestate in November, 1939. Wade Hopkins was a brother of Maude W. Morgan, who is the wife of S. R. Morgan, Sr. In the settlement of the estate of Wade Hopkins, all the capital stock of petitioner was distributed to and became the property of Maude W. Morgan. She also inherited from Hopkins additional ice properties, unincorporated and individually operated, which were located in Little Rock and Pine Bluff, Arkansas, and in Shreveport, Louisiana. After Maude W. Morgan acquired these properties, her son, S. R. Morgan, Jr., was given general supervision of all of her inherited ice properties. Another son, W. Ellis Morgan, was made vice-president of petitioner and placed in charge of its affairs, subject to the general supervision of S. R. Morgan, Jr. At January 1, 1941 petitioner owned ice plants at Longfiew and also at Gladewater, Texas. The Longview plant consisted of an ice-manufacturing plant of 600 ice cans of 300 pounds capacity each, a Westinghouse natural gas engine with an ammonia compressor, a smaller *259 electrically driven ammonia compressor, and other various and sundry pieces of ice-making equipment. The Gladewater plant consisted of a brick building and certain items of machinery and equipment. During 1942 the Gladewater plant was shut down and used merely as a distribution point for ice manufactured at the Longview plant. About the middle of 1942, petitioner acquired from the Reconstruction Finance Corporation a brick building in Dallas, Texas, for a consideration of $8,000, of which $1,000 was paid in cash and the balance by note for $7,000 payable $1,000 annually. The building contained no machinery or equipment, and the usable machinery located in the Gladewater plant was installed in the Dallas building. Other machinery and equipment owned by Maude W. Morgan individually, and located in her Little Rock and Pine Bluff plants, were transported to and installed in the Dallas plant. In excess of 90 per cent of the machinery and equipment installed in the Dallas plant came from the Little Rock and Pine Bluff plants. The Dallas plant was completed and ready for operation in late July or early in August 1942. The Dallas plant was closed down for the winter in October 1942. Due *260 to the extremely competitive situation in Dallas, such plant operated at a loss from the beginning, and after 1943 was permanently shut down. By instrument dated December 21, 1942, filed for record February 27, 1943, petitioner acquired from the Magnolia Ice Company a small ice plant in Beaumont, Texas, entirely on credit. The consideration paid consisted of a promissory note of S. R. Morgan, Sr., in the face amount of $22,500, with interest at four per cent per annum, payable in five installments of $4,500 each, which note was assumed by petitioner when the Magnolia plant was conveyed to it by S. R. Morgan, Sr., who acted for and on behalf of petitioner in acquiring the plant from the Magnolia Ice Company. By instrument dated February 25, 1943, filed for record March 17, 1943, petitioner acquired from R. C. McElmurry, entirely on credit, another small plant in Port Arthur, Texas, known as the Pure Ice Company. The consideration of $30,000 was paid by execution and delivery to the vendor of two notes of $4,000 each and the assumption of an existing mortgage in the amount of $22,000. In March 1943, by instrument dated March 1, 1943, acknowledged March 16, 1943, petitioner purchased *261 from R. C. McElmurry a fairly large plant known as the Crystal Ice Company plant located at Beaumont, Texas, for a consideration of $90,000, to be paid $20,000 in cash, the assumption of an existing mortgage with an unpaid balance of $52,770.25 and the execution and delivery to vendor of second lien notes in the aggregate face amount of $17,229.75. On September 15, 1943, petitioner purchased from Gulf States Utilities Company a closed-down plant located in Port Arthur, Texas, for a cash consideration of $33,500. On December 28, 1943, petitioner acquired from Alvin Ice Company an ice plant located in Alvin, Texas, for a consideration of $16,000. During the taxable year 1943, Maude W. Morgan and S. R. Morgan, Sr., her husband, advanced or loaned to petitioner various sums of money aggregating $48,980.66. During the period January 1, 1944 to December 30, 1944, the date of dissolution, they advanced or loaned to petitioner various amounts aggregating $88,125.41. The funds so paid in were used by petitioner to acquire properties purchased by it in 1943 and 1944, and for operating expenses. No part of the funds advanced by Maude W. Morgan and S. R. Morgan, Sr., were repaid by petitioner *262 during the years 1943 and 1944. Neither Maude W. Morgan nor S. R. Morgan, Sr. withdrew any funds from petitioner for their personal use and benefit. Petitioner was delinquent in filing its income and declared value excess-profits tax returns for the year 1943 and the period January 1, 1944 to December 30, 1944. No Federal excess-profits tax return was filed by petitioner for either of such taxable periods. In making his determination of petitioner's taxable net income for the periods involved, the respondent resorted to the increase in net worth basis. Using the net assets as of January 1, 1943, shown on the 1943 return as $27,822.11, and the net assets as of December 30, 1944, shown on the 1944 return as $159,446.95, respondent determined that the increase in net assets was $131,624.84, of which amount he allocated $42,799.31 as the net taxable income for 1943 and the balance of $88,825.53 as the net income for the period January 1, 1944 to December 30, 1944. Petitioner had no taxable net income in either of the taxable periods involved. Opinion The basic issue presented is whether petitioner had net taxable income in the respective taxable periods involved. This presents *263 a question of fact. Petitioner concedes that, since some of its underlying records had been lost in the process of moving them to different points in its operations, its net income could be arrived at only by the use of the net worth method to which the respondent resorted. Petitioner, furthermore, does not contest the fact that its net assets at the close of 1942 were $27,822.11, and that its net assets as of December 30, 1944, when it was dissolved, were $159,446.95, as used by the respondent. It is the contention of petitioner that the increase in net assets did not result from its operations but was due solely to advances or loans made in 1943 and 1944 to petitioner by Maude W. Morgan and S. R. Morgan, Sr., from their individual funds. The respondent, in determining the deficiency, did not take into consideration such advances to petitioner, but treated the difference between the net assets as of December 31, 1942, and the net assets as of December 30, 1944 as income from operations. Petitioner, of course, has the burden of showing error in the respondent's determination. In support of the contention that the increase in net assets resulted solely from loans and advances *264 made to it by Maude W. Morgan and S. R. Morgan, Sr., in the respective taxable periods, 73 canceled checks were offered and received in evidence without objection. Twenty-nine of such checks or drafts related to the year 1943, and were in varying amounts aggregating $48,980.66. The remaining 44 related to the taxable period 1944, and aggregate $88,125.41. The witness, S. R. Morgan, Sr., traced the source of each individual check or draft and testified that the face amount of each was applied to the benefit of petitioner. He further testified that, during the taxable periods involved, neither he nor Maude W. Morgan, his wife, withdrew any funds or received any moneys from petitioner in repayment of such loans or advances. The respondent offered no evidence to the contrary. The credibility of the witness was not impeached. We perceive no reason for not accepting such testimony. Accordingly, we have found as a fact that loans and advances were made by Maude W. Morgan and S. R. Morgan, Sr., to petitioner aggregating $48,980.66 in 1943 and $88,125.41 in the taxable period January 1 to December 30, 1944. Petitioner further contends that as of December 30, 1944, it was indebted to the Mercantile *265 National Bank on notes aggregating $19,500, which amount was not taken into consideration by its accountant in making his audit. The accountant was one of petitioner's witnesses in this proceeding. No inquiry was made of him respecting the omission of such liabilities to the bank. We are not convinced from the evidence contained in this record that such liabilities were not considered and properly treated by the accountant in his preparation of the balance sheets upon which petitioner's net assets were determined. We think the evidence is insufficient to support a finding of fact with respect to the item of $19,500. The amounts which we have found as a fact were loaned or advanced to the petitioner in the respective taxable periods involved are in excess of the taxable net income as determined by the respondent. We, therefore, hold that petitioner has carried its burden of showing that it had no taxable net income for such periods. So holding, it is unnecessary to determine the question as to whether petitioner is entitled to a net operating loss carry-over from 1942. There being no deficiencies, the asserted penalties of 25 per cent, for failure to file timely returns, fall. *266 Decision will be entered for the petitioner.